UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY MOORE, #94182 | CIVIL ACTION |
| VERSUS | NO. 05-1823 |
| BURL CAIN, WARDEN<br>LOUISIANA PENITENTIARY | SECTION "C" |

### ORDER AND REASONS

Before this Court is a petition for habeas corpus relief by Mr. Johnny Moore pursuant to 28 U.S.C. § 2254. As grounds for relief, petitioner claims that his due process and fair trial rights were violated when: 1) the trial court erred in denying requests for alleged Brady material concerning the murder of Johnny Bachemin; 2) the trial court erred in admitting arson investigator photographs not previously disclosed; 3) there was insufficient evidence to sustain the verdict; 4) petitioner was subject to an illegal arrest; 5) La. C.Cr.P. article 413(c) was unconstitutional, and the grand jury foreperson was selected in a discriminatory manner; 6) he received ineffective assistance of counsel; and 7) cumulative error rendered the trial fundamentally unfair.

Upon a thorough review of the trial, direct appeal, and post-conviction record, the habeas petition and memoranda, and applicable law, the Court has determined that petitioner's habeas corpus petition is without merit. For the reasons set forth below, this petition is **DENIED**.

I.     **Background and Procedural History**

Petitioner is a state prisoner at Louisiana State Penitentiary in Angola.[1] Petitioner filed this federal application for habeas corpus on April 22, 2005.[2]

The following relevant facts are edited from the opinion issued by the Louisiana Fourth Circuit Court of Appeal:

> At about 12:30 on May 27, 1998, the fire department was called to the scene of a fire in the second floor of a townhouse apartment on Burgundy Street. When the firemen arrived, there was no fire on the first floor, but the fire on the second floor was so intense that they could not enter. After waiting a few minutes for water to charge the line, the firefighters entered the bedroom area of the apartment and put the fire out. As they did so fire captain A.J. McGovern saw a body in the debris; he notified his command, which in turn notified the police department. Capt. McGovern then guarded the body and helped police officers look for evidence.
> Capt. McGovern observed a burned shell of a mattress over the upper portion of a burned body. The victim's hands were tied behind his back. The fiber used to tie the victim's hands was saturated with blood. A claw-like hammer and a metal pipe were found underneath the victim. The hammer was badly burned also. Capt. McGovern and arson investigator Thomas St. Germaine testified that they observed "trailers," burn patterns indicating that a fire was set with accelerant. Capt. McGovern explained that a fire ignited with an accelerant leaves darker marks where the accelerant was poured, because the fire is hotter in those areas. Investigator St. Germaine testified that the heat from this particular fire would have been so extreme after it was set that no one could have entered the room.
> The parties stipulated that the burned body was identified from x-rays and dental records as William "Willie" Lewis. Dr. William Newman performed the autopsy. He testified that there was extensive charring of the victim's face and extremities. The victim also suffered depressed skull fractures in the back of the head consistent with blows to the head from a hammer. Oral and rectal swabs were negative for seminal fluid. The victim had type O blood. There was no soot in the victim's lungs, indicating that he died of the blows to his head prior to being set on fire.
> At about the same time that the fire department was called to the fire and only a few blocks away, appellant Johnny Moore was riding a bicycle on North Villere Street when Det. Dan Anderson, who was patrolling with a partner, ordered him to stop. Moore was carrying a heavy duffel bag and a cue stick, and was weaving back and forth, posing a danger to himself and other traffic. After he was stopped, Moore began making threats, stating to Det. Anderson that he had just dropped a gun off, or he would have killed him. Det. Anderson then placed Moore under arrest.

---

[1] Fed. Rec. Doc. 1, Petition for Writ of Habeas Corpus, *Moore v. Cain*, No. 05-1823.
[2] *Id*.

After advising Moore of his rights, Det. Anderson asked him where he got the property in the duffel bag. Moore told him it came from an abandoned house. The officers went with Moore to two locations, but neither location had abandoned property on it. Det. Anderson then relocated to the district station to initiate the paperwork on the threat and another report on lost or stolen property. At trial, Det. Anderson identified the items of clothing and shoes worn by Moore when he was arrested.

Norman Lewis, father of the murder victim, identified the duffel bag and the items inside, including an antique mantel clock, a pocket watch, the cue stick and the bicycle which Moore was riding, as having belonged to his son.

Detective John Riviere was called to the scene of the fire to investigate the fatality for the police department. After observing the scene, he made inquiries among the neighbors, which led him to Rodney Weeden, a handyman who did maintenance work for the victim. Det. Riviere telephoned Weeden, who voluntarily came to the district station for an interview. Because Weeden was a suspect at that time, he was advised of his rights prior to his statement. Through Weeden, Det. Riviere developed a suspect by the name of Johnny Beasley and learned Beasley's address. When Det. Riviere went to that address, the appellant's mother advised him that her son was Johnny Moore, not Johnny Beasley. She further advised Det. Riviere that her son was not home because he was in jail. At that point, Det. Riviere thought he had reached a dead end. However, he ran the appellant's name, date of birth and address through the computer and found out that Moore had been arrested shortly after the fire and only a few blocks away.

Det. Riviere then got a court order to seize the clothes Moore was wearing at his arrest and obtain a sample of Moore's blood. He further obtained an order to seize Moore's shoes, which Moore was still wearing in Parish Prison. Moore and the victim both had type O blood. Accordingly, a swatch of Moore's pants was sent for DNA analysis which indicated that the blood on Moore's pants was from the victim. In addition, Moore's shoes and pants indicated that they were contaminated with a type 3 accelerant consistent with the paint thinner at the victim's home.

When Det. Riviere learned that Moore's pants had type "O" blood on them, the same blood type as the victim, that Moore's shoes and pants were contaminated with mineral spirits, and that the property seized from Moore at his arrest was identified by the victim's family, he had Moore re-booked for murder. He further had Moore brought from Parish Prison to Police Headquarters for questioning. After being advised of his rights, Moore refused to sign the waiver of rights form or make a recorded statement, but made an oral statement to Det. Riviere and Sgt. Kessel.

At first, Moore started crying and said how bad he felt for "Little Willie." After he cried for a few minutes, the officers took a break and got Moore a soft drink. Moore then told them that he went to the location looking for Rodney Weeden. Moore told them that he called for William, who came out with a bloody towel on his head and a black eye. Moore told the officers that he wanted to call the police and get an ambulance, but William told him to take the duffel bag with the property in it to the Villere and Louisa Street area and give it to someone in a green car. Moore further stated that William said he would get medical help when Moore got back after delivering the duffel bag.

3

At trial, Teddy Fambro, the crime scene technician who worked the scene of the fire, testified that checks for blood, hair and fiber on the hammer, pipe and cloth found near the victim were negative. Fambro further testified that he attempted to obtain fingerprints from various items downstairs in the apartment with no success. He explained that fingerprints were very delicate and often damaged by environmental factors such as extreme heat and moisture.

Criminalist Joe Tafaro testified that there was no identifiable blood or accelerant on Moore's T-shirt. However, he found that Moore's blue jeans, shoes, and debris collected from the kitchen of the fire scene tested positive for accelerant consistent with the can of paint thinner found at the scene.

Officer Ed Delery, an expert in the collection and processing of latent fingerprints, testified that extreme heat would have destroyed any prints on the hammer and the pipe. He further testified that a solvent such as paint thinner could also have destroyed any prints on the outside of the paint thinner can.

At trial, the defense attempted to show that the murder of William Lewis was a signature crime committed by the same people who murdered Johnny Bachemin, a noted musician, only a few blocks away and a few weeks later. Dr. Paul McGarry, who performed the autopsy of Johnny Bachemin, testified that Bachemin also suffered hammer blows to his head. However, Bachemin also had his throat slit, was gagged with his own socks, and was bound around his mouth, legs and feet. Lewis, on the other hand, was not gagged, and only his hands were tied. He was then set on fire.

Det. Dwight Deal testified that he was the lead investigator of the Johnny Bachemin murder. Two males, Travis Johnson and Gary Harrell were arrested in that case. Johnson had already confessed to the Bachemin murder. Harrell and Johnson targeted gay males. They were also suspected of the murder of Curtis Moon in Houma, Louisiana. Like Bachemin, Moon's throat was slit and he was gagged with his own sock. In investigating the whereabouts of Harrell and Johnson, Det. Deal concluded that they were in the Thibodaux area when William Lewis was killed.

At trial, Moore testified that the victim opened up to him and told him personal things. He disagreed with Rodney Weeden, who testified that the victim was not gay. Moore further testified that he was drunk, depressed and desperate for money. He testified that when he got to the victim's apartment, he saw that it was on fire and jumped the fence to see if the victim was all right. Moore further testified that when he saw the victim on fire, he tried to move the mattress off of him and got blood on his hands which he wiped on his pants. Moore confessed to stealing the victim's property as he ran out.[3]

On June 2, 1999, the jury found him guilty of second degree murder.[4] On June 18, 1999, petitioner was sentenced to life in prison without benefit of probation, parole, or suspension of sentence.[5] On December 20, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed

---

[3] *State v. Moore,* 777 So.2d 600, 602-604, 1999-2684 (La.App. 4 Cir. 12/20/00).
[4] Id.
[5] Id.

petitioner's conviction and sentence.[6]  The Louisiana Supreme Court denied writs on December 14, 2002.[7]  Petitioner filed an application for post-conviction relief on November 11, 2002.[8]  The Louisiana Fourth Circuit Court of Appeal denied writs on December 4, 2003,[9] and denied reconsideration on January 23, 2004.[10]  The Louisiana Supreme Court denied writs on February 4, 2005,[11] and denied reconsideration on March 24, 2005.[12]  Petitioner then filed his federal application for habeas corpus on April 22, 2005.[13]

## II.     Jurisdiction

Jurisdiction is proper under the Antiterrorism and Effective Death Penalty Act (AEDPA) if the petitioner is "in custody" under the conviction he is attacking.[14]  Petitioner Moore is confined at the Louisiana State Penitentiary in Angola, therefore jurisdiction is proper.

## III.    Venue

Venue is proper under AEDPA in the district where the inmate is in custody or where the state court conviction and sentence were obtained.[15]  Petitioner Moore was convicted and sentenced in Orleans Parish, therefore venue in the Eastern District of Louisiana is proper.

---

[6] *State v. Moore,* 777 So.2d 600, 602-604, 1999-2684 (La.App. 4 Cir. 12/20/00).
[7] *State v. Moore*, 803 So.2d 986. 2001-0365 (La. 12/14/2001).
[8] State Rec. Vol. 7, Application for Post Conviction Relief and Exhibits.
[9] State Rec. Vol. 7, *State v. Moore*, 2003-K-1840, December 4, 2003.
[10] State Rec. Vol. 8, *State v. Moore*, 2003-K-2166, January 23, 2004.
[11] State Rec. Vol. 10, *State v. Moore*, 896 So.2d 1021, 2004-KH-645 (La. 3/24/05).
[12] State Rec. Vol. 11, *State v. Moore*, 893 So.2d 95, 2004-KH-645 (La. 2/4/05).
[13] Fed. Rec. Doc. 1, Petition for Writ of Habeas Corpus, *Moore  v. Cain*, No. 05-1823.
[14] 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a).
[15] 28 U.S.C. § 2241(d).

**IV.     Timeliness**

The state submits that the petition is timely, and after reviewing the record this Court agrees. Generally speaking, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a petitioner bring his Section 2254 claims within one year of the date on which his conviction became final.[16] Pursuant to 28 U.S.C. § 2244(d)(1)(A), petitioner's one-year limitation period for seeking federal habeas corpus relief commenced running on the date the judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review." Petitioner's direct appeal was denied by the Supreme Court of Louisiana on December 14, 2001 and he did not appeal to the United States Court Supreme Court. Petitioner's conviction became final ninety days after the Supreme Court of Louisiana denied his application for supervisory writs, on March 14, 2002.[17]

On this date, the one-year statute of limitations for filing a federal habeas corpus petition began to run.[18] AEDPA's statute of limitations is tolled for the period during which a properly filed application for post conviction relief or other collateral review attacking a conviction or sentence is pending in state court.[19] Petitioner filed a post-conviction application on November 5, 2002, or 236 days later. The statute was tolled until March 24, 2005, when the Louisiana Supreme Court denied writs. Petitioner filed his federal habeas petition on April 22, 2005, 29 days later. A total of 255 days of the 365-day period elapsed prior to petitioner's habeas petition.

For the reasons stated above, the Court finds that Mr. Moore's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is timely.

---

[16] 28 U.S.C. § 2244(d).

[17] The Court notes that even if the period during which petitioner sought reconsideration of the Louisiana Supreme Court's denial of writs on his post conviction application is not counted, and the original denial date of February 4, 2005 is used for tolling purposes, the petition would still be timely.

[18] See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).

[19] See *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2).

**V.     Exhaustion**

Petitioner has exhausted available state remedies as required by AEDPA.  Under AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas relief from the federal courts.[20]  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."[21]  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal habeas petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.[22]

Petitioner presents seven claims for review in his petition as listed above.  The first three claims of error were raised in his application for writs of certiorari to the Louisiana Supreme Court on his direct appeal and the last four were raised in his application for post conviction relief. Accordingly, petitioner has satisfied AEDPA's exhaustion requirement.  Therefore, the Court will address petitioner's claims on the merits.

**VI.     Standard of Review**

AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law.[23]  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under

---

[20] 28 U.S.C. § 2254(b)(1)(A).
[21] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).
[22] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).
[23] 28 U.S.C. § 2254(d):
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(2).[24] As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[25] The United States Supreme Court has noted the following:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams v. Taylor*, 529 U.S. 362 (2002) that an unreasonable application is different from an incorrect one.[26]

As to questions of fact, factual findings are presumed to be correct, and a federal court will give great deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[27]

**VII.  Law & Analysis**

**1) Petitioner argues that the trial court erred in denying requests for alleged Brady material concerning the murder of Johnny Bachemin.**

This claim was raised on appeal.

Petitioner Moore raises an argument grounded in *Brady v. Maryland*,[28] which held that a state violates a defendant's due process rights when it fails to disclose to the defendant prior to trial "evidence favorable to an accused . . . where the evidence is material either to guilt or to

---

[24] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).
[25] 28 U.S.C. § 2254(d)(1).
[26] *Bell v. Cone*, 535 U.S. 685, 694 (2002), internal citations omitted.
[27] 28 U.S.C. § 2254(d)(2); see also *Hill v. Johnson*, 210 F.3d 481, 485; 28 U.S.C. § 2254(e)(1).
[28] *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S.Ct. 1194 (1963).

8

punishment, irrespective of the good faith or bad faith of the prosecution."[29]  Under *Brady*, evidence favorable to the accused includes impeachment as well as exculpatory evidence. The suppression of such evidence is material and violates due process "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[30]

Whether evidence is material under Brady is a mixed question of law and fact.[31] Three requirements must be met before a true *Brady* violation exists.[32]  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[33]

When assessing the materiality of impeachment evidence, the Court must consider "the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony."[34]  It is unlikely that a petitioner will be successful arguing materiality for minor inconsistencies in testimony.[35]

Here petitioner reurges his claim that the information about the Bachemin murder was exculpatory.  The Louisiana Fourth Circuit Court of Appeal held that:

> The defense, in this case, requested the State's entire file on the pending Bachemin case for an in camera inspection. The appellant specifically avers that his direct examination of the lead investigator on the Bachemin case was prejudiced without information from that file. The appellant had specific knowledge, prior to trial, of the similarities of the instant case to the Bachemin case. In addition, the appellant had a copy of the coroner's report from each case, and the identity of the lead investigator of the Bachemin case.

---

[29] *Id*. at 87; see also *United States v. Agurs*, 427 U.S. 97 (1976).
[30] *Strickler v. Greene*, 527 U.S. 263 (1999), internal quotation marks and citation omitted.
[31] *Graves v. Dretke*, 442 F.3d 334, 339 (C.A.5 (Tex.) 2006), citing *Summers v. Dretke*, 431 F.3d 861 (5th Cir.2005), and *Trevino v. Johnson*, 168 F.3d 173, 185 (5th Cir.1999).
[32] *Id*. at 281.
[33] *Id.*
[34] *Wilson v. Whitley*, 28 F.3d. 433 (5th Cir. 1994), citing *United States v. Weintraub*, 871 F.2d 1257 (5th Cir. 1989).
[35] See *Drew v. Collins*, 964 F.2d 411 (5th Cir. 1992), cert denied, 113 S.Ct. 3044 (1993).

9

> The defense theory was that the murders were signature crimes committed by the same perpetrators… The defense thus attempted to show that the two murders were related. The evidence indicates that the murders were committed within a few blocks of each other and within a few weeks of each other. Both cases involved robbery and blows to the head with a blunt instrument. Both cases involved arson. Beyond those similarities, the facts differed substantially.
>
> In the instant case, victim William Lewis's hands were bound with cord and fabric. Bachemin was bound at the knees and ankles with wire. Lewis was struck in the back of the head. Bachemin was struck in the face with enough force to cause fracturing. The Bachemin murder was a signature crime, related to the murder of Curtis Moon, not William Lewis. Victims Bachemin and Moon were each found gagged with a sock and with a slit throat. The perpetrators intended for their bodies to be discovered with this signature. Lewis's body was set on fire, also burning the upper floor of his apartment. His throat was not slashed, nor was there evidence of cuts anywhere on his body, though the fire might have destroyed evidence of superficial cuts. Bachemin's vehicle was set on fire after it was used for an escape.
>
> The appellant, by his own testimony, attempted to show that Lewis's murder was related to a string of murders of homosexuals or apparent homosexuals; however, State witnesses disputed the contention that Lewis was a homosexual. Lastly, the investigating officer on the Bachemin case determined that the perpetrators in that case were not even in the New Orleans area on the day of the instant murder… [T]he evidence relative to the Bachemin murder was not exculpatory. Rather, the additional evidence merely indicated the distinctions in the two cases. This assignment is without merit.[36]

The Court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[37]

The defense argued repeatedly throughout the course of the trial that this murder fit the other two signature murders of Mr. Bachemin and Mr. Moon. Using the testimony of the lead investigator in the Bachemin case, the coroner, and the defendant, the defense attempted to show that Mr. Lewis's murder was a signature killing that was likely perpetrated by the same men who killed Mr. Bachemin and Mr. Moon. The defense was thus able to present the supporting evidence. As the appellate court pointed out, however, substantial differences existed between

---

[36] *State v. Moore*, 777 So.2d 600, 605-606, 1999-2684 (La.App. 4 Cir. 12/20/00).
[37] 28 U.S.C. § 2254(d)(1).

the two signature killings and the murder of Mr. Lewis. The victims were bound differently, both hands and feet, while petitioner had only his hands bound. The two signature killings involved blows to the face, while the victim was hit in the back of the head. The victims in the signature killings had their mouths stuffed with a sock, taped, and their throats slashed; the petitioner had no gag and his throat was not slashed. In the signature killings, the bodies were not burned, while Mr. Lewis's body was set on fire after he was killed. The jury was presented with both theories and rejected the petitioner's.

The trial and appellate courts denied the *Brady* claims. The Court finds this was not contrary to, and did not involve any unreasonable application of, federal law. Therefore, the Court defers to the state court decision, and finds petitioner's claim of a Brady violation to be without merit.

**2) Petitioner argues that the trial court erred in admitting arson investigator photographs not previously disclosed.**

This claim was raised on appeal.

With respect to state court evidentiary rulings, a federal habeas court does not sit to review the correctness of such rulings.[38] It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."[39] A federal habeas court does not sit as a "super" state supreme court to review errors under state law.[40] An error made by the trial judge justifies "habeas corpus relief only when it is material in the sense of [being a] crucial, critical, highly significant factor," such that the trial is rendered fundamentally unfair.[41]

---

[38] *Mercado v. Massey*, 536 F.2d 107, 108 (5th Cir. 1976).
[39] *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999), quoting *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); see also *Molo v. Johnson*, 207 F.3d 773, 776 (5th Cir. 2000); and *Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997).
[40] *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).
[41] *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986).

11

The petitioner reurges his argument that the photographs should have been excluded from evidence since the prosecution did not provide them in advance. The Louisiana Fourth Circuit Court of Appeal found:

> When arson investigator Thomas St. Germaine took the stand, the State submitted to the defense, for the first time, photographs depicting the pour pattern of the accelerant. Defense counsel objected to the admission of the fire department photographs based on the lack of notice. The court permitted defense counsel to take as much time as he needed to review the photographs, but permitted their admission into evidence.
> Appellant now argues that this surprise evidence was prejudicial to his defense that he went upstairs to try to help the victim. As noted by the State, two arson investigation experts testified that the burn patterns on the second floor of the apartment indicated a large amount of accelerant was used, making a very hot fire unlikely to cool down sufficiently for a person to enter the room. The photographs merely supplemented the verbal testimony of two experienced and credible fire department veterans.
> By contrast, the appellant's testimony would have been incredible with or without the photographs. The appellant told arresting officers that he obtained the property in the duffel bag from an abandoned house. Upon rebooking for murder, he told other officers that he went to William's apartment looking for a job. He further stated that William came out holding a bloody towel to his head and asked him to deliver the duffel bag of items to someone in a green car. At trial, he testified that he walked through an open gate when he saw smoke and realized that William's house was on fire. He further testified that, after he saw the victim was on fire and tried to move the burning mattress, he knowingly stole the bicycle and other property.
> Finally, the appellant fails to proffer any other defense he might have used had he known that his theory would be negated by the testimony and supporting photographs of the arson investigation experts.
> Accordingly, considering that the evidence was merely supplemental to the experts' testimony, the appellant's testimony was inconsistent with his two prior statements, and further considering that the appellant suggests no plausible alternative defense, any error in the admission of the photographs was harmless.[42]

The trial court allowed the defense to examine the photographs, which did not introduce new evidence, but rather supplemented the testimony of the investigators. The prosecution stated that she was unaware of the photographs before trial. Given the multiple inconsistencies in the petitioner's statements to the police and at trial, and given that the photographs were only

---

[42] *State v. Moore,* 777 So.2d 600, 607-608, 1999-2684 (La.App. 4 Cir. 12/20/00),), (La.App. 4 Cir. 2000).

evidence that supported previously known expert testimony at trial, the petitioner fails to establish that admission of these photographs rendered the trial fundamentally unfair. The Court defers to the state court decision, finding nothing based on any unreasonable determination of the facts in light of the evidence presented at trial, and finding nothing contrary to or involving an unreasonable application of clearly established Federal law.

**3) Petitioner argues that there was insufficient evidence to sustain the verdict.**

This claim was raised on appeal.

A claim of insufficiency of the evidence is reviewed by a habeas court under the *Jackson* standard.[43] It is a fundamental principle of American jurisprudence that a criminal defendant may not be convicted absent a finding of guilt beyond a reasonable doubt by the finder of fact.[44] However, a jury's findings on an issue of fact will be upset only where necessary to preserve the "fundamental protection of due process of law." [45]

In reviewing a claim of insufficient evidence, this Court must determine whether, looking at the elements of the offense, and viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[46] This Court's review of factual determinations is limited where petitioner had a full and fair opportunity to litigate the factual issue(s).[47] Petitioner's complaint is that he was convicted of second degree murder without sufficient evidence. Specifically at issue is petitioner's argument that the evidence was circumstantial, that the petitioner explained the scientific evidence of blood and accelerant on his clothes and shoes during his testimony.

---

[43] *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).
[44] *Jackson*, 443 U.S. at 316-17, 99 S.Ct. at 2787-88, 61 L. Ed. 2d 560.
[45] *Jackson* at 319, 99 S.Ct. at 2789, 61 L. Ed. 2d 560.
[46] *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000).
[47] See 28 U.S.C. § 2254(d), requiring a general presumption of correctness as to factual findings.

On appeal, the Louisiana Fourth Circuit Court of Appeal found this claim to be meritless.

> [T]he appellant was stopped for reckless operation of a bicycle near a busy intersection. He threatened officers and could not adequately explain where he got the duffel bag full of property he was carrying… The appellant's shoes and pants tested positive for the same type of accelerant as the paint thinner can found outside of the subject apartment. Blood from a swatch from the appellant's jeans was a DNA match to the victim's blood. Family members of the victim identified the property seized from the appellant upon his arrest as belonging to the victim. The appellant's testimony was inconsistent with his prior statement...
> The coroner testified that the victim died of blows to the head, not asphyxiation from the fire… Fire experts testified that the fire was the result of arson. Their testimony further indicated that the fire was too hot for the appellant to have entered the second-floor after the victim was on fire, as the appellant testified… Accordingly, a rational jury could have concluded that there was no other reasonable hypothesis but that the appellant entered the victim's apartment without permission, killed the victim with a blunt object, started the fire to mask the evidence, and stole the victim's property.
> The evidence was thus sufficient for a rational jury to find, beyond a reasonable doubt, that the defendant was guilty of second degree murder under either Sec. A(1), "When the offender has a specific intent to kill or inflict great bodily harm," or Sec. A(2)(a), "When the offender is engaged in the perpetration or attempted perpetration of ... aggravated burglary, ... (or) armed robbery...."[48]

Petitioner had a full and fair opportunity to litigate this issue. Originally the petitioner was charged with first degree murder. The jury unanimously found him guilty of the responsive verdict of second degree murder. The record supports that there was ample evidence to convict petitioner of second degree murder under several of the aggravating factors in the statute. The victim was killed by multiple blows to the head with a hammer. The victim's belongings were found in the possession of the petitioner upon his arrest a few minutes later on the victim's stolen bicycle. The DNA evidence proved that the victim's blood was on the petitioner's pants. The petitioner's clothing contained the same accelerant used to set the fire. The jury believed the testimony of the investigators and the scientific evidence over the testimony of the petitioner. The Court finds that, viewing the evidence in a light most favorable to the prosecution, a

---

[48] State v. Moore, 777 So.2d 600, *604-605, 1999-2684 (La.App. 4 Cir. 12/20/00),), (La.App. 4 Cir. 2000), citations omitted.

14

reasonable trier of fact could find that the elements of second degree murder had been proved beyond a reasonable doubt.

The Court defers to the state court decision, finding nothing based on an unreasonable determination of the facts in light of the evidence presented at trial.

**4) Petitioner argues that he was subject to an illegal arrest.**

This claim was raised in petitioner's application for post conviction relief. The Louisiana Fourth Circuit Court of Appeal reviewed this claim and found that the petitioner had failed to demonstrate that relief should be granted.[49]

With respect to state court evidentiary rulings, a federal habeas court does not sit to review the correctness of such rulings.[50] It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."[51] A federal habeas court does not sit as a "super" state supreme court to review errors under state law.[52] An error made by the trial judge justifies "habeas corpus relief only when it is material in the sense of [being a] crucial, critical, highly significant factor," such that the trial is rendered fundamentally unfair.[53]

The petitioner reurges his argument that the officer had no reasonable suspicion to justify the investigatory stop that resulted in the arrest of the petitioner while riding the bicycle.

This matter was raised at a hearing on a pre-trial motion to suppress.[54] The officer testified that petitioner was riding the bicycle in traffic in a reckless manner while carrying a large bag and a pool cue, and appeared to be endangering himself. Under cross-examination, he maintained he did not stop the petitioner solely because he was curious about what was in the

---

[49] State Rec. Vol. 7, *State v. Moore*, 2003-K-1840, December 4, 2003.
[50] *Mercado v. Massey*, 536 F.2d 107, 108 (5th Cir. 1976).
[51] *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999), quoting *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); see also *Molo v. Johnson*, 207 F.3d 773, 776 (5th Cir. 2000); and *Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997).
[52] *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).
[53] *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986).
[54] State Rec. Vol. 5, Transcript of the Hearing on Motions, November 20, 1998.

bag or because he was "speeding." The officer testified that he then arrested petitioner when he became aggressive and threatened the officer. The judge denied the motion to suppress. At trial, the officer testified consistently with his previous statement. The jury found the officer's testimony credible. The petitioner offers mere allegations, but no evidence, that the police had no reasonable cause to make an investigatory stop.

The Court defers to the state court decision, finding nothing based on any unreasonable determination of the facts in light of the evidence presented at trial, and finding nothing contrary to or involving an unreasonable application of clearly established Federal law.

**5) Petitioner argues that La. C.Cr.P. article 413(c)[55] was unconstitutional, and the grand jury foreperson of the jury was selected in a discriminatory manner.**

This claim was raised in petitioner's application for post conviction relief. The Louisiana Fourth Circuit Court of Appeal reviewed this claim and found that the petitioner had failed to demonstrate that relief should be granted.[56]

It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."[57] A federal habeas court does not sit as a "super" state supreme court to review errors under state law.[58]

In Louisiana, a criminal defendant must assert a due process or equal protection claim regarding the selection and composition of a grand jury in a motion to quash filed prior to trial or waive any complaint in that regard.[59] The petitioner filed a motion to quash the indictment, but

---

[55] La. C.Cr.P. article 413(c) previously allowed the judge to select a grand jury foreperson. That portion of the article was repealed by Acts 2001, No. 281, § 2, after that selection process was ruled unconstitutional.
[56] State Rec. Vol. 7, *State v. Moore*, 2003-K-1840, December 4, 2003.
[57] *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999), quoting *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); see also *Molo v. Johnson*, 207 F.3d 773, 776 (5th Cir. 2000); and *Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997).
[58] *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).
[59] *Deloch v. Whitley*, 96-1901 p. 2 (La.11/22/96), 684 So.2d 349, 350.

16

it was on the grounds that the Louisiana Capital Murder Statute was unconstitutional.[60] Petitioner is now procedurally defaulted from raising this claim. However, petitioner would not be entitled to relief even had the claim not been defaulted. Louisiana law holds that:

> The statute and codal provisions in *Dilosa* were declared unconstitutional solely because they were local laws in violation of the state constitution, La. Const. art. III, § 12(A). "The constitutional prohibition against local laws which underlies the *Dilosa* decision simply reflects a policy decision that legislative resources and attention should be concentrated upon matters of general interest and that purely local matters should be left to local governing authorities." Thus, "the substantial rights of a criminal defendant are not affected per se solely because he is indicted by a grand jury selected pursuant to local laws passed by the Louisiana State legislature." Where a criminal defendant fails to show that his substantial rights were affected, he is not entitled to relief.[61]

Petitioner's argument is grounded in state law, and review is barred by a federal court in the absence of a violation of substantial federal constitutional rights. Petitioner fails to establish that his federal constitutional rights were violated during the impaneling of the grand jury.

The Court defers to the state court decision, finding nothing based on any unreasonable determination of the facts in light of the evidence presented at trial, and finding nothing contrary to or involving an unreasonable application of clearly established Federal law.

**6) Petitioner argues that he received ineffective assistance of counsel.**

This claim was raised in petitioner's application for post conviction relief. The Louisiana Fourth Circuit Court of Appeal reviewed this claim and found that the petitioner had failed to demonstrate that relief should be granted.[62]

A claim of ineffective assistance of counsel is a mixed question of law and fact.[63] Therefore, this Court must defer to the state court on these claims unless that decision "was

---

[60] State Rec. Vol., Motion to Quash, p. 144-49.
[61] *State v. Harris*, 892 So.2d 1238, 1261, 2001-2730 (La. 2005), citations omitted.
[62] State Rec. Vol. 7, *State v. Moore*, 2003-K-1840, December 4, 2003.

17

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[64]

In *Strickland* the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.[65] A petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.[66]

Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."[67] If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.[68]

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[69] "Counsel's performance is deficient if it falls below an objective standard of reasonableness."[70] Petitioner must overcome a strong presumption that the counsel's conduct falls within a wide range of reasonable representation.[71] To prove prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[72] A reasonable probability is one "sufficient to undermine confidence in the outcome."[73]

---

[63] *Moore v. Co*ckrell, 313 F.3d 880, 881 (5th Cir. 2002), cert. denied, 538 U.S. 969, 123 S.Ct. 1768 (2003).
[64] 28 U.S.C. § 2254(d)(1).
[65] *Strickland v. Washington*, 466 U.S. 668 (1984).
[66] *Id*. at 697.
[67] *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).
[68] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).
[69] *Styron v. Johnson*, 262 F .3d 438, 450 (5th Cir.2001), cert. denied, 534 U.S. 1163 (2002).
[70] *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998).
[71] *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).
[72] *Strickland*, 466 U.S. at 694.
[73] *Id*.

Petitioner argues that defense counsel failed to investigate, impeach witnesses, develop a trial strategy, give a proper opening statement, or offer expert testimony to challenge the DNA evidence.

Contrary to petitioner's claim, the record supports that defense counsel presented a defense using the strategy that the murder had been committed by two other perpetrators. He rigorously cross-examined the prosecution witnesses concerning why they stopped the petitioner on the stolen bicycle at the time of the crime; on how they developed him as a suspect; and on their procedures in retrieving petitioner's clothing and a blood sample for testing. He cross-examined the fire investigator's testimony in an attempt to show that there was no conclusive evidence of how long, or how hot, the fire burned. Defense counsel's opening statement, which is not evidence but rather a narrative of what he intends for the facts to show, did place the petitioner at the scene, but so did defendant's previous statements and testimony at trial. Defense counsel stipulated to the DNA evidence admission, however that supported his defense theory of the case that the petitioner had come upon the scene after the murder, and had slipped on the victim's blood before stealing the belongings of an already dead man.

Petitioner fails to establish that counsel's behavior fell outside the wide range of reasonable representation. In addition, petitioner fails to establish any prejudice to him as a result of counsel's performance.

The petitioner fails to satisfy the *Strickland* test that counsel's behavior was deficient and prejudicial. The Court finds nothing contrary to, or involving any unreasonable application of, federal law, and so defers to the state court decisions denying relief for petitioner's claims of ineffective assistance of counsel.

**7) Petitioner argues that cumulative error rendered the trial fundamentally unfair.**

This claim was raised in petitioner's application for post conviction relief.  The Louisiana Fourth Circuit Court of Appeal reviewed this claim and found that the petitioner had failed to demonstrate that relief should be granted.[74]  Finding no grounds for relief as requested on the individual claims, it is not necessary for the Court to address the issue of cumulative error.

**VIII.   Conclusion**

Having considered the complaint, the record, the evidentiary hearing transcript, and the applicable law, it is determined that petitioner has failed to demonstrate that his state conviction and sentence present grounds for the relief requested.  Accordingly, **IT IS ORDERED** that the petition of JOHNNY MOORE for writ of habeas corpus under 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**.  Judgment will be entered accordingly.

New Orleans, Louisiana this 5th day of March, 2007.

HELEN G. BERRIGAN, U.S DISTRICT JUDGE

---

[74] State Rec. Vol. 7, *State v. Moore*, 2003-K-1840, December 4, 2003.